AO 106 (Rev. 04/10) Application for a Search Warrant

US DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FILED
JUL -2 2024
Ronald E. Dowling
By_____
Deputy Clerk

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas
El Dorado Division

IN THE MATTER OF THE SEARCH OF CERTAIN INFORMATION AND MATERIALS STORED AT PREMISES OWNED, CONTROLLED OR OPERATED BY AMAZON.COM, INC., A COMPANY WITH HEADQUARTERS IN SEATTLE, WASHINGTON, IN THE WESTERN DISTRICT OF WASHINGTON, AND/OR ITS PARENT OR SUBSIDIARY ENTITIES

No. 1:24cm18-CDC

**Filed Under Seal**

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe property to be searched and give its location)*:
    See "Attachment A"

located in the Western District of Washington there is now concealed *(identify the person or describe the property to be seized)*:
    See "Attachment B." This Court has authority to issue the requested search warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A), and Federal Rule of Criminal Procedure 41.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
    [x] evidence of a crime;
    [ ] contraband, fruits of crime, or other items illegally possessed;
    [ ] property designed for use, intended for use, or used in committing a crime;
    [ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation, in the Western District of Arkansas, of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2113(a) and 2113(d) | Armed bank robbery |
| 18 U.S.C. § 924(c) | Possessing a firearm in furtherance of a crime of violence |

The application is based on these facts: *(See attached affidavit of FBI Special Agent Issac Brown, Jr.)*

[x] Continued on the attached sheet.

[ ] Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Issac Brown Jr.*
Special Agent Issac Brown, Jr., Federal Bureau of Investigation
*Affiant*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1, by appearing via telephone conference call at 479-251-1946.

Date: July 2, 2024 @ 2:48 pm

City and state: Fayetteville, AR

_____
*Judge's signature*
Hon. Christy D. Comstock, U.S. Magistrate Judge, W. D. Ark.

US DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FILED

JUL -2 2024

Ronald E. Dowling
By_____
        Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF CERTAIN INFORMATION AND MATERIALS STORED AT PREMISES OWNED, CONTROLLED OR OPERATED BY AMAZON.COM, INC., A COMPANY WITH HEADQUARTERS IN SEATTLE, WASHINGTON, IN THE WESTERN DISTRICT OF WASHINGTON, AND/OR ITS PARENT OR SUBSIDIARY ENTITIES | Case No. 1:24cm18-CDC<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Issac Brown, Jr., being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since September 2021. I am currently assigned to the Little Rock Division, El Dorado Resident Agency where I am charged with investigating violations of various federal criminal laws. I have been trained and/or involved in various aspects of criminal investigations, including among other things, conducting victim/witness/subject interviews, debriefing defendants, sources, and informants; conducting surveillance or undercover operations; executing arrest and search warrants; monitoring Title III wiretaps; and analyzing documentary and physical evidence. During my employment with the FBI, I have received training concerning fraud, violent crimes, corruption, civil rights, and have been involved in the investigations of numerous federal offenses. Included in my responsibilities are overseeing and conducting federal investigations in relation to violations of 18 U.S.C. §§ 2113(a) and 2113(d) (armed bank robbery), and 18 U.S.C. § 924(c) (possessing a firearm in furtherance of a crime of violence).

2. I make this affidavit in support of an application for a search warrant pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A), seeking information and materials (including complete digital video and/or audio recordings, and any metadata associated therewith) connected with an Amazon.com, Inc., account associated with the following unique "Blink" home security camera device identifier(s):

   a. Device Media Access Control Identification Number (MAC ID): **D8:BE:65:B4:1D:01**

   b. Device Serial Number (DSN): **G8V1-GH00-1212-N9T9**

which account is further described in Attachment A hereto (hereinafter the "Subject Account"). The information and materials sought from the Subject Account are further described in Attachment B hereto, and are stored at premises owned, maintained, controlled, or operated by Amazon.com, Inc., an American multinational technology company with headquarters in Seattle, Washington, in the Western District of Washington, and/or its parent or subsidiary entities. Among those subsidiary entities is Immedia Semiconductor, LLC, d/b/a "Blink", a home security products company owned by Amazon and headquartered in Massachusetts (hereinafter "Blink"). Amazon.com, Inc., and Immedia Semiconductor, LLC, are referred to collectively herein as "Amazon".

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant, and therefore does not set forth all my knowledge about this matter.

4. Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 2113(a) and 2113(d) (armed bank robbery), and 18 U.S.C. § 924(c) (possessing a firearm in furtherance of a crime of

2

violence) have been committed by Melvin WILTSHIRE in the Western District of Arkansas. There is also probable cause to search the information described in Attachment A for evidence of those crimes, as is further described in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6. On April 2, 2024, Union County Sheriff's Office (UCSO) Chief Deputy Charlie Phillips notified FBI Little Rock, El Dorado Resident Agency, of a bank robbery at Simmons First National Bank, located at 9652 Strong Highway, on the north side of the highway, in Strong, Arkansas (hereinafter "Simmons Bank"). Simmons Bank has provided documentation showing that, at the time of the April 2, 2024, robbery, its deposits were insured by the Federal Deposit Insurance Corporation (FDIC). Strong, Arkansas, is in Union County, in the Western District of Arkansas. When UCSO deputies responded to the call, three Simmons Bank employees (hereinafter "Witnesses 1", "Witness 2" and "Witness 3", or, collectively, the "Bank Employees") reported that, at approximately 3:55 PM, on April 2, 2024, an unknown older white male, wearing blue jeans, a dark hooded shirt, black-framed glasses with clear lenses, and a camouflage mask covering his face from the nose down (hereinafter the "Subject"), had robbed the bank while armed with a small, black revolver handgun. The Bank Employees reported that the Subject pointed the firearm at them and demanded money from their teller drawers. They also said the Subject was carrying a green and black colored backpack and had instructed Witness 1 to place money in it. The Bank Employees further reported that the Subject had

3

instructed them to get down on the floor, and to remain there for two (2) minutes after he left. After the Bank Employees placed cash in the green and black backpack, the Subject took it and left the bank on foot. Simmons Bank management has since conducted an audit to determine the amount of money taken in the robbery, and has now advised that the amount was twenty-three thousand, eight hundred fifty dollars ($23,850.00) in U.S. Currency. Witness 2 reported that the cash stolen by the Subject was primarily in the form of fifty-dollar ($50) and one hundred-dollar ($100) bills.

7. FBI agents, including myself, responded to Simmons Bank shortly after being notified of the robbery. There, investigators obtained and reviewed Simmons Bank's surveillance camera video. The relevant video contains five (5) camera views, and is date/time stamped between April 2, 2024, at approximately 15:55:00, and April 2, 2024, at approximately 15:59:00. Video from an exterior bank camera, captured at about 3:55 PM on April 2, 2024, shows the Subject, dressed in a gray hooded shirt and blue jeans, walking from the direction of a wooded area that lies to the north of Simmons Bank (hereinafter the "Wooded Area"), and entering through the bank's western door. After the Subject enters the bank, video from an interior camera shows him holding a black and green bag in his left hand, and pulling a small, black revolver handgun from his right-side waistline. The Subject is then seen approaching and pointing the firearm at the Bank Employees and instructing one to place money in the green and black bag. The Subject is also seen pointing the firearm and gesturing for the Bank Employees to get down on the floor and face the wall. At approximately 3:57 PM, video from an exterior bank camera shows the Subject leaving Simmons Bank carrying the green and black bag and walking back toward the Wooded Area.

8. In responding to the robbery on April 2, 2024, UCSO deputies spoke to a local resident (Witness 4) near Pecan Street, in Strong, Arkansas. Pecan Street is a short street

running north from its intersection with Strong Highway. The intersection of Pecan Street and Strong Highway is approximately 540 feet west of the Simmons Bank parking lot entrance, which is also on the north side of Strong Highway. Witness 4 reported that (at around the time of the robbery), they saw an individual running from the direction of Simmons Bank toward the Wooded Area, being pursued by dogs. UCSO Lieutenant Austin McCuistion observed that a chain-link fence between Simmons Bank and the Wooded Area had been cut from top to bottom.

9. Another person (Witness 5) told UCSO that they had seen an older white male, driving a gray pick-up truck south on North Hickory Street, in Strong, Arkansas, not long after the robbery. Like Pecan Street, North Hickory Street runs north from its intersection with Strong Highway. The intersection of North Hickory Street and Strong Highway is approximately 1/3 of a mile west of the Simmons Bank parking lot entrance, which is also on the north side of Strong Highway. Like Pecan Street, North Hickory Street essentially 'dead ends' at the Wooded Area to the north of Simmons Bank.

10. Witness 5 told deputies that their North Hickory Street residence was equipped with a Blink security camera device (hereinafter the "Blink Camera") that had captured video footage of the truck in question, as it passed Witness 5's residence on the day of the Simmons Bank robbery (hereinafter the "Blink Video"). Witness 5 said their residence also had a Ring camera device (hereinafter the "Ring Camera") that had recorded video of the same truck. On the day of the robbery, both the Blink Camera and the Ring Camera were so oriented as to capture video of the area in front of Witness 5's residence, including portions of North Hickory Street. Witness 5 provided investigators still images taken from both the Blink Video and the Ring Camera video. The images from the Blink Video (which is date/time stamped) show an older, dark gray Ford F-150 regular cab pickup driving north past Witness 5's residence at about 7:13 AM on April 2, 2024—before the robbery. Images from both the Blink Video and the Ring

5

Camera video (which is also date/time stamped) show what appears to be the same F-150 driving *south* past Witness 5's residence at about 4:45 PM the same day—*after* the robbery. The images from the Blink Video show that the F-150's front wheels were noticeably darker in color than its rear wheels, possibility indicating an accumulation of brake dust.

11. Because the Blink and Ring Cameras covered an area near where North Hickory Street 'dead-ends' at the Wooded Area, investigators surmised that the dark gray F-150 may have driven *into* the Wooded Area prior to the Simmons Bank robbery, via a narrow unpaved track that begins at the northern terminus of North Hickory Street. Since the Suspect had approached Simmons Bank from, and later fled toward, the Wooded Area, investigators identified the dark gray F-150 as a possible suspect vehicle.

12. Because the available information indicated the Suspect had fled north from Simmons Bank, toward the Wooded Area, El Dorado Police Department (EPD) Sergeant Logan Owens deployed a certified law enforcement scent-tracking canine in that vicinity. While doing so, Sgt. Owens observed what he believed to be fresh human footprints near the northern terminus of Pecan Street, at the Wooded Area. The footprints appeared to Sgt. Owens to have been made by a person walking or running west, away from Simmons Bank and toward North Hickory Street. Sgt. Owens' canine also tracked a scent from the area at the northern terminus of Pecan Street to a section of the unpaved track that runs into the Wooded Area from the northern terminus of North Hickory Street. In the area where that scent trail apparently ended (based on Sgt. Owens' explanation of his canine's behavior), officers observed and photographed what appeared to be tire tracks left in the ground.

13. At approximately 7:15 PM on April 2, 2024, UCSO Lieutenant Austin McCuistion observed a dark gray regular cab Ford F-150 pickup, bearing expired AR license plate number 164-XHA, traveling east on Strong Highway, in Union County. This truck's front

wheels are noticeably darker in color than its rear wheels, being apparently coated in brake dust. In make, model, age, color, and other features, it appears identical to the dark gray Ford F-150 seen approaching, and later driving away from, the Wooded Area before and after the Simmons Bank robbery. Having observed this truck, Lt. McCuistion saw it pull into the parking lot of a Dollar Saver store located at 9217 Strong Highway, in Strong, Arkansas. After it parked in the lot, a white male exited the F-150's driver seat. Law enforcement officers then approached the driver, who was identified as Melvin WILTSHIRE, age 55, of Mount Ida, Arkansas. WILTSHIRE's age, build and descriptors, including his dark framed glasses with clear lenses, fit those of the Subject who robbed the Simmons Bank earlier the same day, as described by witnesses and seen on the bank's security video. WILTSHIRE declined to answer questions and asked for an attorney. WILTSHIRE was taken into custody by UCSO on state charges relating to the Simmons Bank robbery. Records of the Arkansas Department of Finance and Administration's Office of Motor Vehicles show that Arkansas license plate number 164-XHA is assigned to a gray Ford F-150 pickup, which is registered to Melvin Wiltshire, of Mount Ida, Arkansas.

14. As WILTSHIRE was the only occupant of the dark gray Ford F-150 he had been driving, and since the truck would otherwise be abandoned on private property following WILTSHIRE's arrest, UCSO had it towed from the Dollar Saver parking lot. Before the truck was released to the wrecker service, however, the truck's contents were inventoried consistent with UCSO policy. During the inventory of WILTSHIRE's dark gray F-150, four (4) unspent Federal brand .38 Special caliber pistol cartridges were found in the truck. These were seized as evidence by UCSO, given that .38 Special is a caliber most often used in revolver-type handguns like the one used in the Simmons Bank robbery. Investigators also noted that the tread pattern of one or more of the tires on WILTSHIRE's F-150 appears to match the pattern of the tire tracks

that officers saw and photographed in the Wooded Area toward which the Suspect had fled after the Simmons Bank robbery. After it was inventoried, WILTSHIRE's truck was towed to a Union County law enforcement facility.

15. Following WILTSHIRE's arrest, and the impoundment of his dark gray F-150, federal and state investigators returned to the vicinity of Simmons Bank to search the Wooded Area for evidence connected with the robbery. Walking northwest from Simmons Bank (toward the area of North Hickory Street where Witness 5's security camera captured the dark gray F-150, following the robbery), EPD Sgt. Logan Owens found a green multi-camouflage bag. The bag contained a black Weihrauch 'Windicator' .38 special caliber revolver bearing serial number 1776745 (hereinafter the "Revolver"), a pair of blue jeans, a gray T-shirt, a gray hoodie shirt, brown boots, a box of blue medical-style face masks, water bottles, and an aerosol can of scent-masking spray, of a type commonly used by hunters. The clothing items and firearm match the description of the items used in the bank robbery. The black revolver's cylinder was found to be loaded with five (5) rounds of unspent, Federal brand, .38 Special caliber ammunition, leaving one of its six (6) chambers empty. All of these items were seized as evidence.

16. Approximately twenty to thirty yards from where Sgt. Owens found the multi-camouflage bag, officers also found a green and black backpack. This backpack matched the description of the backpack carried by the Suspect during the Simmons Bank robbery. Inside the green and black backpack, officers found twenty-one thousand, two hundred fifty ($21,250.00)[1] dollars in U.S. currency, which was in fifty-dollar ($50) and one hundred-dollar ($100) denominations. Also recovered from the green and black backpack were a camouflage mask and

---

[1] This amount was mistakenly reported as $21,150.00 in a prior affidavit but is corrected here.

8

wire cutters—the latter being of a type which might be used to cut a chain-link fence. All of these items were also seized as evidence.

17.     After the robbery, your Affiant submitted a firearm trace request regarding the Revolver to the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), National Tracing Center. In response, ATF provided information indicating that the Revolver was originally purchased at an Atwoods Ranch and Home store in Union County, Arkansas, by Melvin Wiltshire, of Mount Ida, Arkansas. Transaction records obtained from the store itself have since confirmed that WILTSHIRE purchased the Revolver at that store on July 17, 2022.

18.     One of Witness 5's family members, Witness 6, told investigators that service is provided to the Blink Camera in connection with Witness 6's Amazon account. Corroborating this, Witness 6 was able to access the Blink Video from her mobile phone. Witness 6 told investigators that, on the day of the Simmons Bank robbery, video captured by the Blink Camera was actively being remotely stored by Amazon, in connection with Witness 6's Amazon account. With assistance from investigators, Witness 6 was able to determine that that the Media Access Control Identification Number (MAC ID) for the Blink Camera is **D8:BE:65:B4:1D:01**, and that its Device Serial Number (DSN) is **G8V1-GH00-1212-N9T9**. From my training and experience, I know that MAC ID's are unique 12-digit hexadecimal values assigned to individual devices connected to a computer network, analogous to physical addresses. From my communications with Amazon, I also know that the unique MAC ID's and DSN's of individual Blink camera devices are associated with the accounts of specific subscribers in Amazon's records. As such, Amazon can identify and produce information associated with a specific Amazon subscriber account—including stored video and/or audio recordings from Blink camera devices—by reference to the MAC ID and/or DSN of a Blink camera device connected with that account.

9

## AMAZON AND BLINK BACKGROUND

19. From my review of publicly available information provided by Amazon, I am aware of the following:

   a. Amazon, through Blink, sells products and services designed to see, hear, and speak to anyone at the customer's door, via the customer's mobile device.

   b. Amazon receives electronically, and often retains, content captured and recorded using Blink's products and services, such as video or audio recordings, live video or audio streams, images, comments, and data collected by Blink products and devices from their surrounding environments to perform their functions (such as motion detection).

   c. Amazon generally retains and has access to video or audio recordings transmitted to it by Blink devices only if the user has a current Blink Subscription Plan. If a customer chooses to subscribe to a Blink Subscription Plan, then the customer's Blink devices automatically send any video and/or audio recordings they capture to Amazon for storage.

   d. Amazon asks customers to provide personal information in connection with Blink's products and services. This may include: contact information, such as name, phone number, email, and postal address; account information, such as online password and other log-in details used to access Blink's products and services.

   e. Amazon obtains payment information in connection with Blink products and services, such as name, billing address and payment card details, including card number, expiration date and security code.

10

    f. Amazon also obtains the geolocation of Blink customers' mobile devices, if such customers consent to the collection of this data.

    g. Amazon also obtains Blink product setup information, including the name and description of the Blink product and location where it is installed, technical information about the product, including computer, device, and connection information such as device application or browser type and version, internet protocol (IP) address used to connect to computers or other devices to the internet, browser plug-in types and versions, operating system, or time zone setting.

    h. As a subsidiary of Amazon.com, Inc., Blink's services are 'Amazon Services' for purposes of the Amazon.com, Inc., 'Conditions of Use'.

20. On April 8, 2024, in anticipation of this search warrant application, I submitted a written request to Blink pursuant to 18 U.S.C. § 2703(f), asking it to preserve all information and materials associated with the Subject Account for 90 days, retroactive to April 2, 2024. Thereafter, within that initial 90-day preservation period, I submitted a second written request to Blink on July 1, 2024, asking that it continue to preserve the above-described information and materials for an *additional* 90 days. In my training and experience, Blink and its parent company Amazon.com, Inc., comply with such preservation requests by law enforcement agencies. I therefore have probable cause to believe that all of the evidence and materials described in Attachment B presently remain in Amazon's possession and control.

## MANNER OF THE SEARCH

21. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title 18, United States Code, Sections 2703(a), (b)(1)(A), and (c)(1)(A), by using the warrant to require Amazon to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I

11

of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

22. Considering the facts set forth above, I have probable cause to believe that relevant evidence of violations of 18 U.S.C. §§ 2113(a) and 2113(d) (armed bank robbery), and 18 U.S.C. § 924(c) (possessing a firearm in furtherance of a crime of violence) is presently concealed within information and materials possessed or controlled by Amazon in association with the Subject Account described in Attachment A. I therefore respectfully request that a search warrant be issued, compelling Amazon to disclose to the government the information and materials described in Attachment B.

23. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. Because the government will execute this warrant by serving it on Amazon, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

24. I further request that the Court order that all papers in support of this application, including this affidavit, the application itself, and any search warrant issued in consequence thereof, be sealed until further order of the Court. Because these documents discuss an ongoing criminal investigation, there is good cause to seal these documents because their premature disclosure could jeopardize the investigation.

Respectfully submitted,

*Issac Brown Jr.*
_____
Special Agent Issac Brown, Jr.
Federal Bureau of Investigation

Attested to by the affiant in accordance with the requirements of Fed. R. Crim. P. 4.1, by appearing via telephone conference call at 479-251-1946 on this 2nd day of July, 2024.

*Christy Comstock*
_____
HON. CHRISTY D. COMSTOCK
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information and materials held or stored by Amazon.com, Inc., and/or its parent or subsidiary entities, including Immedia Semiconductor, LLC, d/b/a "Blink", (hereinafter collectively "Amazon") in connection with an Amazon subscriber or customer account associated with the following unique "Blink" camera device identifier(s):

a.  Device Media Access Control Identification Number (MAC ID): **D8:BE:65:B4:1D:01**

b.  Device Serial Number (DSN): **G8V1-GH00-1212-N9T9**

(hereinafter the "Subject Account"), which information and materials are held or stored at premises owned, maintained, controlled, or operated by Amazon, an electronic communications service provider with headquarters in the Western District of Washington.

## ATTACHMENT B

### Particular Things to be Seized

**I.  Information to be disclosed by Amazon.com, Inc., and/or its parent or subsidiary entities:**

To the extent the information and materials described in Attachment A are within the possession, custody, or control of Amazon.com, Inc., and/or its parent or subsidiary entities, including Immedia Semiconductor, LLC, d/b/a "Blink", (hereinafter collectively "Amazon"), including any video and/or audio recordings, communications, records, files, logs, or other data that have been deleted, but which are still available to Amazon, or which have been preserved pursuant to a request made pursuant to 18 U.S.C. § 2703(f), Amazon is required to disclose to the government the following items associated with the Subject Account described in Attachment A:

   a. All video and/or audio recordings created, captured, transmitted, or stored by or through any Blink camera device associated with the Subject Account **between 00:00 CDT on April 1, 2024, and 23:59 CDT on April 2, 2024**, to include any stored, preserved, or user-deleted copies of same;

   b. All logs, records, data, time/date information, and/or metadata, including Blink camera device location information, if any, which are associated with, or are relevant to, the recordings described in the preceding paragraph, and any stored, preserved, or user-deleted copies of same; and

   c. Subscriber information for the Subject Account, as stored by Amazon, including full name, e-mail address(es), physical address (including city, state, and zip code), phone number(s), billing address, and any other personal identifiers.

*Amazon is hereby ORDERED to disclose the above information and materials to the government within 14 DAYS of the issuance of this search warrant.*

**II.  Information to be seized by the government:**

All information described above in Section I that constitutes relevant evidence of violations of 18 U.S.C. §§ 2113(a) and 2113(d) (armed bank robbery), and 18 U.S.C. § 924(c)

(possessing a firearm in furtherance of a crime of violence) committed by Melvin WILTSHIRE on April 2, 2024, in the Western District of Arkansas, including, but not limited to:

    a.    recordings or depictions of WILTSHIRE and/or any vehicle(s) used in connection with the above-described crimes;

    b.    evidence tending to establish the date(s), time(s), and location(s) at which such recordings or depictions were originally created or captured;

    c.    evidence of any prior planning by WILTSHIRE, in anticipation of committing the above-described crimes, including scouting avenues of approach and flight from the scene;

    d.    evidence of WILTSHIRE's arrival and departure times to/from the area of North Hickory Street in Strong, Arkansas, on April 2, 2024;

This warrant authorizes a review of electronically stored information, communications, other records, and information disclosed pursuant to this warrant, in order to locate the evidence, described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.